UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BUNKERS INTERNATIONAL CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>M/V ATALANDI, Official No. 9282792, her engines, machinery, appurtenances, etc.,<br><br>    Defendant *in rem*,<br><br>and<br><br>Minerva Marine Inc.,<br><br>    Defendant *in personam*,<br><br>and<br><br>The Master of the M/V ATALANDI,<br><br>    Garnishee. | Civil Action No. _____<br><br>IN ADMIRALTY<br><br>JUDGE: _____<br><br>MAG. JUDGE: _____ |

**VERIFIED COMPLAINT FOR ARREST OF VESSEL *IN REM*
WITH REQUEST FOR ISSUE OF WARRANT OF ARREST AND
WRIT OF MARITIME ATTACHMENT AND GARNISHMENT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Bunkers International Corporation ("BIC" or "Plaintiff") for its Verified Complaint against the M/V ATALANDI ("Vessel"), defendant *in rem*, and Minerva Marine Inc. ("Minerva"), defendant *in personam*, stating an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h), respectfully represents upon information and belief:

**Jurisdiction and Venue**

1. This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 31341 *et seq.* (the Federal Maritime Lien Act), and within the meaning of Fed. R. Civ. P. 9(h), because this is an action for breach of maritime contract.

2. Venue is proper in this Court because the Vessel is, or soon will be, present in this District.

### The Parties

3. BIC has its principal place of business in Lake Mary, Florida and is a national seller of marine fuels (also known as "bunkers") to ocean-going vessels, including the Vessel.

4. The Vessel is a Greek-flagged ship and is owned, operated, and managed by Minerva.

5. Minerva is a Greek corporation with its principal place of business in Athens and provides shipmanagement services.

### COUNT I – *In Rem* Against the Vessel (Rule C)

6. Plaintiff repeats the foregoing paragraphs.

7. On June 8, 2015, Minerva ordered bunkers from BIC for provision to the Vessel at Curacao. A true and correct copy of the Nomination from Minerva is attached hereto as Exhibit A.

8. On June 8, 2015, BIC sent a confirmation notice (the "Confirmation") (a true and correct copy of which is attached hereto as Exhibit B) of the bunkers order to Minerva which referenced BIC's General Terms and Conditions of Sale (the "BIC Terms") and stated in pertinent part as follows:

> **PAYMENT TERMS:** 21 DAYS FROM DATE OF DELIVERY AGAINST ORIGINAL, EMAIL OR FAX INVOICE & BDR(S). Late payments incur

monthly interest/surcharge as outlined in Sellers General Terms & Conditions of Sale.

Any overtime, demurrage, wharfage, cancellation fees, downgrades, pump-backs, taxes and/or other local fees, if applicable, are for Buyer's account unless otherwise agreed upon in advance.

\* \* \*

OTHER TERMS:

Seller's General Terms and Conditions of Sale are fully incorporated herein by this reference and are available upon written request or on the internet at http://www.bunkersinternational.com. This Confirmation of Contract and Seller's General Terms and Conditions of Sale shall be governed by the laws of the United States of America and the State of Florida, without reference to any conflict of laws or choice of law rules which could otherwise result in the application of the laws of another jurisdiction.

Buyer warrants that the Vessel's Owner has given Buyer express authority to purchase the Product and that the Buyer is authorized by the Vessel's Owners, Operators, Managers, Agents, Ship Masters, Disponent Owners, and/or Charterers to pledge the Vessel's credit, as defined by section 971 of the United States Federal Maritime Lien Act. In consideration of the Seller's provision of Product to the Vessel, it is agreed that United States law controls as if Seller's provision of Product was made to the Vessel in the United States. Seller is relying on the credit of the Vessel and by providing Product to the Vessel Seller expressly maintains an in-rem maritime lien against the Vessel as provided under U.S. law. Any attempt to avoid or impair Seller's lien against the Vessel shall be null, void and of no effect. No disclaimer of lien or liability whether by stamp or other form, shall operate to alter, change or waive Seller's maritime lien against the vessel or the Vessel's liability in-rem for the debt resulting from the provision of Product to it. Buyer further warrants that it has informed the Vessel's Owners of this Confirmation of Contract and Seller's General Terms and Conditions of Sale.

If you are acting as a broker/intermediary for another party, including an owner, manager, or charterer, you confirm for yourself and that other party that you agree to our terms and conditions of sale, all of which govern this transaction and delivery. You also confirm that you have, prior to your agreement with us on behalf of that other party, forwarded to that party directly a copy of our Terms and Conditions of sale and that the party has accepted our Terms and Conditions of sale. Bunkers International relies on the confirmations that you have made to us in this paragraph, as a material condition to our agreement to this transaction and delivery.

> We will assume that all parties agree to this confirmation unless we are notified in writing immediately after the date and time that this message is sent via email or fax.

9. BIC did not receive any notification from Minerva rejecting any of the above terms, or any other terms of its sale.

10. BIC did not receive any notice from Minerva, its agent, or otherwise, of any "no lien" prohibition concerning or related to BIC's provision of marine fuel to the Vessel.

11. BIC provided the bunkers to the Vessel on or about June 15, 2015 pursuant to the BIC Terms (a true and correct copy of which are attached here to as Exhibit C).

12. The Master and/or Chief Engineer, on behalf of the Vessel, confirmed receipt of the marine fuel which BIC provided to the Vessel. A true and correct copy of the Receipt for Marine Bunker Fuels ("BDR") is attached hereto as Exhibit D.

13. On or about June 19, 2015, following provision of the marine fuel to the Vessel, BIC rendered its principal invoice to Minerva for $273,088.53. A true and correct copy of BIC's invoice is attached hereto as Exhibit E. As set forth in the principal invoice, payment was due by July 6, 2015.

14. The BIC Terms, as well as its Confirmation, provide that, upon provision of the marine fuel to the Vessel, BIC held, pursuant to United States law, a maritime lien against the Vessel to secure the full amount BIC is owed as invoiced for the fuel.

15. Despite repeated demand, BIC has not been paid for the marine fuel that it provided to the Vessel.

WHEREFORE, Plaintiff prays that in response to this Count I, this Court order as follows:

      A.      That a Warrant of Arrest be issued, and that this Court direct the United States Marshal to arrest the M/V ATALANDI, as well as its tackle and apparel, and serve a copy of this Verified Complaint and requiring the Vessel to answer the allegations contained herein; and

      B.      That process of arrest, in due form of law, according to the course and practice of this Honorable Court in causes of Admiralty and Maritime Jurisdiction within the meaning of the Constitution of the United States and Fed. R. Civ. P. 9(h), may be issued against the Vessel, its engines, machinery and appurtenances, etc., and all other necessaries and equipment belonging and appurtenant thereto, as provided in Supplemental Rule C; and

      C.      That all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, its engines, machinery and appurtenances, etc., and all other necessaries and equipment belonging and appurtenant thereto, may be seized, condemned and sold to pay the demands and claims aforesaid, with interest, costs and attorney's fees; and

      D.      That after due proceedings had, Plaintiff's maritime lien resulting from the said provision of marine fuel be recognized as the paramount lien against the Vessel, superior to the claims and interests of all others, and that the said Vessel be condemned and sold to pay Plaintiff's claim, together with interest and costs and reasonable attorneys' fees; and

      E.      That Plaintiff may become purchaser at any sale of the Vessel by bidding the amount of its claim; and

      F.      That the amount claimed herein, together with all amounts required to be disbursed for the case and preservation of, movement of if necessary, and insurance on the Vessel, and all costs including attorneys' fees incurred by Plaintiff, be taxed as costs against the Vessel; and

G. That it be declared that any and all persons, firms or corporations and all others claiming any interest in the Vessel are forever barred and foreclosed from all rights or equity of redemption or claim in and to the Vessel and every part thereof; and

H. That after due proceedings, judgment be entered in favor of BIC and against the Vessel, *in rem*, recognizing BIC's preferred maritime lien, and for judgment *in rem* in the amount of at least $273,088.53, plus costs and any other further relief this Court deems proper.

## COUNT II – *Quasi In Rem* Against China Navigation (Rule B)

16. BIC repeats the foregoing paragraphs.

17. Minerva has breached its contractual obligations to BIC by failing to pay for marine fuel ordered by Minerva.

18. Minerva cannot be found within this District pursuant to Supplemental Rule B.

19. However, Minerva now has or will have during the pending of this action property within this district including the M/V ATALANDI.

20. As a result of Minerva's breach, BIC has suffered damages of at least the amount demanded immediately below.

WHEREFORE, BIC prays that in response to this Count II, this Court

A. Issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B attaching all of Minerva's tangible or intangible property or any other funds held by the garnishee on behalf of Minerva, up to the amount of at least the amount demanded herein to secure BIC's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Supplemental Rule B, answer the matters alleged in the Verified Complaint, as more fully set out below; and

- 7 -

      B.      Enter judgment for BIC and against Minerva in the amount of at least $273,088.53, plus costs, plus reasonable attorneys' fees, and any other further relief this Court deems proper.

Dated: November 6, 2015.

| | |
|---|---|
| OF COUNSEL | /s/ C. Gordon Starling, Jr. |
| J. Stephen Simms | C. GORDON STARLING, JR. (#12408) |
| Marios J. Monopolis | The Law Office of Gordon Starling, LLC |
| Simms Showers LLP | 601 Poydras Street, Suite 1660 |
| 201 International Circle | New Orleans, LA 70130-6029 |
| Baltimore, Maryland 21030 | Tel:   (504) 525-2141 |
| Tel:   (410) 783-5795 | Email: gstarling@starling-law.com |
| Fax:   (410) 510-1789 | |
| Email: jssimms@simmsshowers.com | |
|        mjmonopolis@simmsshowers.com | |

Attorneys for Plaintiff

## **VERIFICATION OF COMPLAINT**

I, C. Gordon Starling, Jr., am an attorney with the law firm of Law Office of Gordon Starling, LLC, and counsel to Plaintiff. I verify under solemn affirmation that the facts alleged in the foregoing Verified Complaint are true and correct to the best of my knowledge and information based upon the records of Plaintiff made available to me by Plaintiff. The reason I make this declaration is that Plaintiff is a foreign corporation with no officers or directors within this District.

I have personally inquired into the presence in the Eastern District of Louisiana of Defendant Minerva Marine Inc., and I have been told by the office of the Secretary of State of Louisiana that the Defendant is not incorporated pursuant to the laws of the State of Louisiana and that the Defendant is not registered to conduct business within the State of Louisiana, and has not nominated agents for service of process within the State of Louisiana.

I have inquired of Directory Assistance for area codes within the Eastern District of Louisiana and have been advised that the Defendant does not have a telephone listing in these area codes. To the best of my information and belief, based upon this investigation, the Defendant cannot be found within the Eastern District of Louisiana for purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2015.

>  */s/ C. Gordon Starling, Jr.*
> C. GORDON STARLING, JR.